## ASHWANDER et al. v. TENNESSEE VALLEY AUTHORITY et al.

### No. 355.

District Court, N. D. Alabama, Northeastern Division.

Feb. 11, 1935.

See, also, (D. C.) 8 F.Supp. 893.

Forney Johnston, of Birmingham, Ala., for plaintiffs.

James Lawrence Fly and Wm. C. Fitts, both of Washington, D. C., for Tennessee Valley Authority.

Henry T. Hunt, of Washington, D. C., for P. W. A.

W. H. Mitchell, of Florence, Ala., for City of Florence and City of Sheffield.

John E. Delony, Jr., of Tuscumbia, Ala., for City of Tuscumbia.

GRUBB, District Judge.

1. Section 202 of the National Industrial Recovery Act (40 USCA § 402) authorizes the appropriation of government money, as a loan or grant, for the construction of a municipal electric light plant, and is constitutional under the right given Congress to raise money by taxes (article 1, § 8, cl. 1) for the general welfare; the purpose being to reduce general unemployment thereby. Missouri Utilities Co. v. City of California (D. C.) 8 F. Supp. 454.

2. An Alabama municipal corporation, under the Carmichael Act (Acts 1933, Ex. Sess. p. 100), as construed by the Supreme Court of Alabama in the case of Oppenheim v. City of Florence, 155 So. 859, has authority to issue and sell its bonds for the construction of an electric light plant to the P. W. A., provided they are not general obligations of the municipality, creating an excess in its constitutional debt limit.

3. The P. W. A. was an authorized lender, and the municipal corporations were authorized borrowers, for that purpose.

4. The illegality, if any, lies in the claimed disability of the T. V. A. to engage in the business of creating and disposing of electric current within the state of Ala-

bama, in a manner having no relation to any constitutional power, and the question is whether this claimed illegality extends to the loan or grant of government money to the municipal corporation through the P. W. A., so as to make such a loan or grant illegal and void and subject to be restrained by a private utility injured by it.

5. If the T. V. A. has the right to engage in the business of making and selling electric current in Alabama to the municipal corporations, for final distribution to consumers, the P. W. A. has the right and power to loan, to the municipal corporations, money to construct distributing plants for electric power to be furnished by the T. V. A. to them.

6. If the T. V. A. is without power to engage in the business of making and disposing of electric energy in Alabama to the municipal corporations, for the reason named, the court must, then, determine whether that illegality infects the proposed loans by the P. W. A. to the municipal corporations with illegality.

7. The evidence shows that the P. W. A., in making the loans, knew that the proceeds of the loans were intended to be used by the municipal corporations, to construct distributing plants for the purpose of handling the electric energy, to be furnished to them by the T. V. A. in competition with private electric utilities in Alabama, and to reduce rates.

8. Further, the P. W. A. and the T. V. A. were each agencies of the United States, and the money loaned or to be loaned by the P. W. A. was the money of the United States, and the acts of the T. V. A., in competition with the private electric utilities, were the acts of the United States.

9. Eliminating the alphabetical governmental branches, it is as if the United States was illegally engaging in the production and distribution of electric energy, and, in aid of the conduct of the illegal business, was seeking to loan to the municipal corporations, money, knowing it was to be used by them in the construction of distributing plants, for the disposal of the production which the T. V. A. created and disposed of illegally.

10. If the T. V. A. had the right to engage in the general business of creating and selling electric energy in Alabama, its competition, in so doing, with private utilities therein, would not furnish them a ground of legal complaint. Lawful competition by a

government agency with a private utility is no wrong, and, if the doing of the business was authorized, the competition could not be restrained. Frost v. Corporation Commission of Oklahoma, 278 U. S. 515, 49 S. Ct. 235, 73 L. Ed. 483; City of Campbell v. Arkansas-Missouri Power Co. (C. C. A.) 55 F.(2d) 560.

11. If, however, engaging in the business by the government or its agency was unlawful, and so subject to be restrained by private utilities injured by the illegal competition, another agency of government, intending to lend money to the municipal corporation for the express and known purpose of enabling it to build an electric distributing plant to handle the electrical output of the T. V. A. in competition with the private utility, could likewise be restrained by the injured private utility from making the loan. The T. V. A. and P. W. A., though separate legal entities, are each and together the United States government. Hence, the United States, as T. V. A., would be engaged in the unlawful business, and the United States, as P. W. A., would be lending the municipal corporations money, with the knowledge and purpose that it was to be used by the municipal corporations in constructing distributing plants to aid the T. V. A. in an illegal business, and a business that would be, and was intended to be, in direct competition with the private utilities, and they would be subjected to direct injury by such unlawful competition.

12. The right of a stockholder of a private utility, so injuriously affected, to restrain the lending of the money for such a known purpose by the P. W. A., after demand and refusal by the private utility to do so, would be on the same basis as that of a stockholder seeking on behalf of his corporation to restrain the T. V. A. from engaging in the claimed illegal and injuriously competitive business, after such demand and refusal. Dodge v. Woolsey, 18 How. 331–344, 345, 15 L. Ed. 401.

13. The resulting conclusion is that if the T. V. A. is to be enjoined from continuing to engage in the business of making and selling electric energy in Alabama, using distributing plants to be constructed by municipal corporations for that intended purpose, with the proceeds of loans or grants from the P. W. A., made by it with like knowledge and purpose, then the making of such loans and grants by the P. W. A. to the municipal corporations is equally subject to be restrained.

14. The right of plaintiffs to the continuance of the restraining order preventing the loans by the P. W. A. to the municipal corporations can be determined only after the completion of the hearing in the main case, and by the result of it, as to whether or not the T. V. A. is found to be engaging lawfully or unlawfully in the electrical power business.