SCHOOL DIST. NO. 37, CLARK COUNTY, WASH., v. ISACKSON.

No. 8417.

Circuit Court of Appeals, Ninth Circuit.

Oct. 29, 1937.

Charles W. Hall, of Vancouver, Wash., for appellant.

Arthur H. Lewis, of Portland, Or., and Charles T. Peterson, of Tacoma, Wash., for appellee.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Appellee brought an action to recover for labor performed and materials furnished, recovered a judgment against appellant; thereupon this appeal was taken.

In 1933, appellant entered into a grant agreement with the United States, as a result of an application filed by appellant for a grant of money for the construction of an addition to a high school building, and for the remodeling of the existing building. The United States thereby granted appellant an amount not to exceed 30 per centum of the cost of the labor and materials employed on the project, but in no event to exceed $35,000. The grant agreement contained certain terms and conditions upon which the grant was made.

The terms of the grant agreement required that the plans, drawings, specifications, and construction contracts be in form and substance as approved by the United States; that appellant, without the prior written consent of the United States, would not purchase any materials or equipment for the project subject to any chattel mortgage or conditional sales agreement; that all construction contracts and all subcontracts would be subject to the rules and regulations adopted by the United States to carry out the purposes of the National Industrial Recovery Act (48 Stat. 195). Another provision required appellee to terminate any contracts made, at the request of the United States, and upon violation of the provisions of any of the contracts. Other provisions required substantially all the provisions related hereinbelow with reference to the contract between appellant and appellee.

Appellee was not a party to the grant agreement.

On January 13, 1934, appellee entered into a contract with appellant for the construction of the project for the sum of $104,857.50. The contract provided that the work was to be done in accordance with drawings \and specifications, which were made a part of the contract, and that it was to be completed by a certain date, and if completion was not had by that time, liquidated damages of $100 per day thereafter would be paid by appellee. The contract provided: "No contracts will be awarded until bids have been examined and passed upon by the State Engineer (P.W.A.) who will satisfy himself that the bidders are capable of carrying on the work bid upon and that the contract is awarded to the lowest responsible bidder."

Other general provisions of the contract were that appellee agreed to comply with the conditions prescribed in section 7 (a) (1) and (2) of title 1 of the National Industrial Recovery Act (15 U.S.C.A. § 707 (a) (1, 2), and to cause all subcontractors to comply therewith; that appellant would permit the Federal Emergency Administration of Public Works, through its agents, to inspect the works, and records of appellee regarding pay rolls, personnel, invoices, and other data. It. was provided that appellee would report, and cause the subcontractors to report, at a designated time, the number of employees, the amount of the pay rolls, man-hours work, wage scales paid to the various classes of labor, and expenditures for materials. Copies were to be furnished to the government engineer and to the United States Department of Labor, as well as the names and addresses of the subcontractors. It was also provided that contract must be countersigned by the Clark County Welfare Board;[1] that appellee would not contract with any subcontractor who had not signed and complied with the applicable codes of fair competi-

---

[1] The contract was so signed.

tion approved under the National Industrial Recovery Act, or who had not signed and complied with the President's Re-employment Agreement. Finally it was provided that if appellee, or any subcontractor, violated any of the provisions herein described, appellant could terminate the contract by written notice.

With respect to labor, it was provided that convict labor would not be used; that with a few exceptions and in "so far as practicable and feasible in the judgment of the Government Engineer, no individual directly employed on the project" would "be permitted to work more than 30 hours in any one week"; that no work would be permitted on Sundays or legal holidays, except in cases of emergency; that appellee and the subcontractors would pay not less than the minimum hourly wage rates for skilled and unskilled labor prescribed by the Federal Emergency Administration of Public Works; that appellee would furnish the government engineer, on demand, a sworn statement of the hours worked by, and the wages paid to, each employee. It was further provided that the minimum rates would be subject to change by the Federal Emergency Administration of Public Works on recommendation of the Board of Labor Review, and that if different minimum wage rates were established, then the contract price would be adjusted accordingly; that the Board of Labor Review would hear all labor issues arising in the performance of the contract, and its decisions would be binding. It was also provided that certain labor preferences would be given, and that to "the fullest extent possible, labor required for the project and appropriate to be secured through employment services" would "be chosen from the lists of qualified workers submitted by local employment agencies designated by the United States Employment Service"; and that there would be no discrimination in the selection of labor for race, creed, or color.

With respect to the materials to be used on the project, it was provided that no materials manufactured by convict labor would be used on the project; that only materials produced under the codes of fair competition under Title 1 of the National Industrial Recovery Act (section 1 et seq., 15 U.S.C.A. § 701 et seq.) or under the President's Re-employment Agreement would be used on the project, except when the government engineer certified that such requirement was not in the public interest, or that the consequent cost was unreasonable. Finally, it was provided that so far as practicable appellee would give preference to the use of locally-produced materials, if such did not involve higher cost, inferior quality, or insufficient quantities, subject to the determination of the government engineer.

The grant was not mentioned or referred to in this contract.

Appellee began the work in January, 1934, and completed it in February, 1935. Progress payments had been made in the total sum of $91,735.58. During the construction, about 200 changes were made in the original plans, and the work was not completed until long after the scheduled time. A dispute arose as to how much, if any, was due appellee.

On December 24, 1935, appellee filed its complaint alleging a cause of action in quantum meruit, alleging the reasonable value of the work performed and the material furnished to be $133,862.14, alleging payments in the sum of $91,735.58, and demanding judgment in the sum of $42,126.56.

Appellant asserted three defenses: (1) A denial that the reasonable value of the work performed and the material furnished was the amount alleged in the complaint, and alleged that it was no more than $96,764.87; (2) the work was governed by a written contract; and (3) appellee was estopped to deny the written contract.

So far as is here material, the reply asserted: (1) That the contract referred to was void; (2) that it was rescinded by subsequent parol agreements; and (3) that it was waived by appellant.

At the conclusion of the evidence the court below ruled that the contract was void, saying in part: "I am not prepared to hold that the defendant did not have the right to adopt by reference regulations already made by some federal authority, but to step aside, or attempt to give by power of attorney to any federal authority power to decide matters arising in the future, or any voice in matters arising in the future under this contract, is an illegal delegation, or attempted delegation of authority, and as it enters into the contract, the written—attempted agreement rather, to the extent that it does, the Court cannot pull these fangs and leave a contract, and is brought to the point where it finds no other reasonable outlet, but to hold the contract invalid. The constitution of the

United States guarantees to every state a republican form of government. A republican form of government is one where the people choose their representatives, and the only exception that the constitution makes is that the legislature or the executive, when the legislature is not in session, may ask the aid of the president in repelling invasion or suppressing domestic violence."

The court thereupon instructed the jury as to the only remaining issue, being the reasonable value of the work performed and the materials furnished. The jury returned a verdict in favor of appellee in the sum of $27,302 upon which judgment was rendered. This appeal ensued.

Appellant contends that we may not consider the grant agreement because appellee was not a party to it, and it was an independent contract. Appellee contends that the grant agreement is void, that his contract with appellant grew out of or was connected with the illegal grant agreement, and therefore his contract is void. See Armstrong v. Toler, 24 U.S. (11 Wheat.) 258, 6 L.Ed. 468; Kimbro v. Bullitt, 63 U. S. (22 How.) 256, 269, 16 L.Ed. 313; Bothwell v. Buckbee-Mears Co., 275 U.S. 274, 277, 48 S.Ct. 124, 125, 72 L.Ed. 277. We are not convinced that the argument of appellee in this particular is sound, but a decision on this matter is unnecessary here, for assuming, without deciding, that the grant agreement must be considered, we hold that there is no illegal delegation of power under either the grant agreement or the contract, for reasons hereinafter set forth.

Article 1, section 8 of the Constitution, provides: "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States."

Appellee argues that the building in question does not provide for the general welfare, but is purely a local matter, over which Congress has no control. That conclusion seems to be sustained by Missouri Public Service Co. v. City of Concordia (D. C.Mo.) 8 F.Supp. 1, and Washington Water Power Co. v. City of Coeur d'Alene (D.C.Idaho) 9 F.Supp. 263.

At the time of the enactment of the National Industrial Recovery Act, a severe economic emergency was upon us, nationwide in scope. To relieve that emergency the act was passed providing for a program which would promote employment, and thus aid in the relief of the emergency. To that end a large appropriation was made for expenditures in public works. The appropriation was valid. Kansas Gas & Electric Co. v. City of Independence (C.C.A.10) 79 F. (2d) 32, 100 A.L.R. 1479. The appropriation was then allocated to various projects throughout the nation, which projects were local in their nature, when considered separately. However, the projects must not be considered separately, but as a part of a nation-wide program. So considering such projects, the Congress had power to control them in their provision for the general welfare. Greenwood County v. Duke Power Co. (C.C.A.4) 81 F.(2d) 986, 994, 997; Missouri Utilities Co. v. City of California (D.C.Mo.) 8 F.Supp. 454, 464; Ashwander v. Tennessee Valley Authority (D.C.Ala.) 9 F.Supp. 800, 801.

Under the law of Washington a school district is considered to be an arm of the state for the administration of its school system, and the functions of the school district are governmental. Howard v. Tacoma School District No. 10, 88 Wash. 167, 152 P. 1004, Ann.Cas.1917D, 792. Appellee contends that appellant unlawfully delegated its power and authority to officers of the United States and therefore the contract is void. It seems to be conceded, and for the purpose of this decision we may assume, that if the functions of the school district, being governmental, were delegated to such officers of the United States, the construction contract containing such delegation of power is void.

Although the statutes of Washington require that a project, such as the one in question, can only be constructed under a written contract (Rem.Rev.Stat.Wash. §§ 4803, 4804), and although that contract may be void, recovery may be had on quantum meruit. Criswell v. School District No. 24, 34 Wash. 420, 75 P. 984; Green v. Okanogan County, 60 Wash. 309, 111 P. 226, 114 P. 457; Abrams v. Seattle, 173 Wash. 495, 23 P.(2d) 869.

We must first determine whether or not appellant has delegated any of its powers. Appellant did not delegate any duty by requiring the bid to be satisfactory to the state engineer. It still had the duty of exercising its discretion as to the bidder. Requiring the bid to be satisfactory to an additional agency delegated none of its authority. The state engineer is in no different position than an attorney or architect.

No doubt appellant required the bids and contract to meet the approval of its attorney and architect also, but that is far from saying that it delegated its duties to such attorney or architect. Appellant by such provision abandoned none of its powers.

The remaining provisions of the contract are in the same category and are subject to the same construction. They delegate no powers or duties, but are simply conditions in the contract which appellee agreed to fulfill. They purport to make no transfer of any kind, but were simply lawful conditions.

■ Those provisions in the grant agreement which required the foregoing provisions in the contract between appellant and appellee did not require surrender of any powers by appellant. It had the choice, in its discretion, of accepting the grant and requiring the contractor to comply with the conditions enumerated, or it could refuse the grant. It exercised its discretion and decided that the contractor must comply with the lawful conditions, when it accepted the grant.

■ However, in the grant agreement are certain provisions not contained in the contract between appellant and appellee. The grant agreement provided that appellant would not purchase any materials or equipment for the project subject to any chattel mortgage or conditional sales agreement, without the written consent of the United States. The provision is unimportant here, because the contract required appellee to furnish all materials for the project.

Another provision of the grant agreement provided that all construction contracts and all subcontracts must be subject to the rules and regulations adopted by the United States to carry out the purposes of the National Industrial Recovery Act. Here again we do not find a surrender of power, but an exercise of discretion in the adoption of the rules and regulations.

■ The other provision in the grant agreement, which is not contained in the contract between appellant and appellee, is one requiring appellant to cancel a construction contract upon request of the United States if provisions of the construction contract were violated. That provision might be said to transfer to the United States the discretion to cancel such a contract. Assuming, without deciding, that such provision is void, the provision is separable, and may be ignored. Restatement of the Law of Contracts, § 603; 13 C.J. 513, § 470; 6 R.C.L. 815. In this connection, appellee contends that the contract is not severable or divisible. That principle applies to a case where recovery is sought for performance of a part of the contract, but has no application here.

We hold that the court below erred in declaring the contract void, and in not submitting to the jury the issues as to whether or not the contract was rescinded or waived. If Arkansas-Missouri Power Co. v. City of Kennett (C.C.A.8) 78 F.(2d) 911, and Illinois Power & Light Corporation v. City of Centralia (D.C.Ill.) 11 F. Supp. 874, 879, are contrary to the views herein expressed, then we decline to follow them.

Since the case must be remanded for a new trial, it is unnecessary to consider the other questions urged.

Reversed and remanded for a new trial.

MATHEWS, Circuit Judge.

I concur in the result and, except as indicated below, agree with what is said in the main opinion.

Appellee was not a party to the grant agreement between appellant and the United States. The grant agreement is not mentioned or referred to in the construction contract between appellant and appellee. The validity of the construction contract is in no way dependent on that of the grant agreement. Whether the grant agreement was valid or invalid is of no interest or concern to appellee. Not having been raised by any one entitled to raise it, that question need not and should not be decided.

With the conclusions of my associates touching the merits of the question, I express neither agreement nor disagreement.